# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

WILLIAM WARE,                                    )
VIRGINIA WARE, and                               )
SUMMER WARE,                                     )
                                                 )
    Plaintiffs/Appellants,                       )
                                                 )       Davidson Chancery
                                                 )       No. 95-2493-III
VS.                                              )
                                                 )       Appeal No.
                                                 )       01A01-9604-CH-00170
MICHAEL C. GREENE,                               )
Commissioner, State of Tennessee                 )
Department of Safety,                            )
                                                 )
    Defendant/Appellee.                          )

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

For the Plaintiffs/Appellants:

John S. Colley, III
COLLEY & COLLEY
Columbia, Tennessee

For the Defendant/Appellee:

John Knox Walkup
Attorney General and Reporter

Rebecca Lyford
Assistant Attorney General

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the forfeiture under the Tennessee Drug Control Act of $4,710.75 in cash, twenty-two pistols, rifles and shotguns, a video camera, silver bars, and assorted gold and silver coins during a search of a residence in Waynesboro. The Commissioner of Safety ordered the currency and personal property forfeited despite the family's contention that an initial search of their home and property without a warrant was illegal. The family filed a petition for judicial review in the Chancery Court for Davidson County. The trial court found the personal property was lawfully seized after the officers obtained a search warrant and affirmed the forfeiture order. The family perfected this appeal. We have determined that there is substantial and material evidence to support the commissioner's decision.

## I.

Around midday on September 29, 1994, Special Agent James Lawson of the Tennessee Alcoholic Beverage Commission and Trooper Dennis Peevyhouse of the Tennessee Highway Patrol were conducting aerial reconnaissance of the Waynesboro area from a helicopter at an altitude of approximately 900 feet. They observed a patch of marijuana growing on property owned by William and Virginia Ware. The patch was approximately one hundred feet from the Wares' house, and even though the marijuana plants were covered by opaque netting, the sunlight filtering through the cloth enabled the officers to easily identify the plants as marijuana. They radioed their discovery to a ground team and directed them toward the Ware property.

Under Trooper Peevyhouse's direction, Special Agent Bond Tubbs of the Tennessee Alcoholic Beverage Commission entered the Ware property along one of the driveways leading to the Wares' house. As he approached the house, he discovered two additional marijuana patches on the left of the driveway which were not visible from the road. He also observed other containers in which large

marijuana plants were growing on other portions of the property. Agent Tubbs radioed confirmation that marijuana was growing in abundance on the Wares' property.

As the four other officers accompanying Agent Tubbs made their way toward the Wares' residence, they encountered Summer Ware, the Wares' daughter. She did not respond to them when they identified themselves as law enforcement officers and informed her that they had discovered marijuana growing on the property. Mrs. Ware, who was in the house, likewise declined to respond to the officers or to permit them to enter the residence. After Summer Ware eventually restrained the family's pit bull, the officers entered the house to secure the premises and to determine whether anyone else was in the house. As they walked through the house, they observed a bag of marijuana on a window sill and another bag of marijuana hanging on a wall. They discovered no other persons in the house but shortly thereafter apprehended Mr. Ware in the woods surrounding the house. At that point, Mr. and Mrs. Ware and their daughter were placed under arrest.

The Circuit Court for Wayne County issued a search warrant for the Ware property based on an affidavit prepared by Agents Lawson and Callahan based on the helicopter observations of Trooper Peevyhouse. The officers began the search of the property at 4:30 p.m. on September 29, 1994 and continued until the next morning. During this search, the officers discovered and seized numerous items associated with the cultivation of marijuana, as well as $4,710.75 in cash, twenty-two pistols, rifles and shotguns, a video camera, assorted gold and silver coins, silver bars, 151 marijuana plants, 200 LSD units, and one ounce of methamphetamine.

The Wares filed a claim seeking the return of their personal property on the ground that it had been retained as a result of an illegal search. The administrative law judge determined that Agent Tubbs' discovery of the two marijuana patches to the left of the Wares' driveway did not provide probable cause but that discovery of the first patch of marijuana by the officers in the helicopter provided

the officers with sufficient justification to enter the Wares' property and home.[1] Accordingly, the ALJ determined that the officers were legally on the Wares' property and thus that they had not seized the Wares' personal property illegally. The ALJ denied the Wares' claim for the return of their property. The Commissioner of Safety affirmed this conclusion, as did the trial court.

## II.

The Wares assert that the officers' entry onto their property and into their home was illegal and that it tainted the later search conducted after the officers obtained a warrant. They contend that Trooper Peevyhouse's "confirmed" observation of marijuana from the air did not provide sufficient justification for the officers to proceed without first obtaining a warrant and that it likewise did not provide an adequate basis on which to obtain a search warrant. The Wares also contend that there is no evidence, other than the illegally seized evidence, proving that their property was subject to forfeiture under the Tennessee Drug Control Act.

On this appeal, the Department does not base its forfeiture case on evidence obtained by the officers before they obtained the search warrant. Rather, it bases its case on the observations of Agent Lawson and Trooper Peevyhouse and on the evidence seized after the officers obtained a warrant to search the Wares' house and surrounding property. Thus, the pivotal issue is whether the information provided by Trooper Peevyhouse provided an adequate basis for obtaining a search warrant.

The exclusionary rules used in criminal proceedings are equally applicable in forfeiture proceedings. *See One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702, 85 S. Ct. 1246, 1251 (1965); *Williams v. State Dep't of Safety*, 854 S.W.2d 102, 106-07 (Tenn. Ct. App. 1992). Accordingly, evidence obtained in violation of a defendant's constitutional rights is not admissible, *see* Tenn. R. Crim. P. 41(f); *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961);

---

[1]The Department has not taken issue on this appeal with the ALJ's findings with regard to the suppression of the evidence concerning the two marijuana patches growing to the left of the Wares' driveway, and so the correctness of this finding is not before us on this appeal.

*Hughes v. State*, 145 Tenn. 544, 565, 238 S.W. 588, 594 (1922), nor is evidence derived from illegally obtained evidence. *See Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 416 (1963). However, these exclusionary rules do not prohibit the introduction of evidence obtained by means genuinely independent from the constitutional violation. *See Segura v. United States*, 468 U.S. 796, 805, 104 S. Ct. 3380, 3385 (1984); and *State v. Clark*, 844 S.W.2d 597, 600 (Tenn. 1992).

The search warrant at issue in this case was obtained based on the information provided by Trooper Peevyhouse alone. His observation of marijuana was independent of the marijuana discovered by Agent Tubbs as he approached the Wares' house before the officers obtained the warrant. The adequacy of the information supplied by Trooper Peevyhouse should be measured by the two-prong *Aguillar-Spinelli* test.[2] The "basis of knowledge" prong requires the issuing magistrate to consider the basis for the affiant's information; while the "veracity" prong requires the issuing magistrate to determine whether the information provided in the affidavit is credible. *See State v. Valentine*, 911 S.W.2d 328, 330 (Tenn. 1995).

The Wares attack the information supplied by Trooper Peevyhouse on both fronts. First, they assert that the combination of the altitude of the helicopter coupled with the fact that the marijuana was covered with opaque cloth indicate that Trooper Peevyhouse did not have a sufficient basis for concluding that the vegetation he observed under the opaque cloth was marijuana. Second, they attempt to undermine Trooper Peevyhouse's credibility by arguing that he could not have been very confident about his discovery of marijuana because he radioed Agent Tubbs to "confirm" that the officers on the ground had indeed discovered marijuana on the Wares' property.

---

[2]*See Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509 (1964).

Neither of these arguments is sufficient to call into question either the basis of Trooper Peevyhouse's information or his veracity. In their affidavit used to obtain the search warrant, Agents Lawson and Callahan stated that they had

> received information from Tennessee Highway Patrol Trooper Dennis Peevyhouse that on September 29, 1994, he observed marijuana growing on the premises belonging to William Dean Ware located at Route # 4, Box 928, Waynesboro, Tennessee. The marijuana was approximately 100 feet from the house. Trooper Peevyhouse observed the marijuana while conducting an aerial search of Wayne County. Trooper Peevyhouse has been trained in the aerial detection of marijuana growing and has observed marijuana growing many times in the past that has lead [sic] to arrests and convictions. Furthermore, it has been the experience of your affiants that person [sic] who grow marijuana tend to keep marijuana, marijuana seeds, pictures and records in their residences.

The adequacy of this affidavit must be viewed in light of the circumstances and in light of the entire substance of the affidavit. *See State v. Lowe*, 949 S.W.2d 300, 304 (Tenn. Crim. App. 1996).

The information contained in the affidavit was sufficient for a neutral, detached magistrate to determine that Trooper Peevyhouse could be believed and that he was capable of making a reliable determination that marijuana was growing on the Wares' property. The affidavit stated that Trooper Peevyhouse had special training and experience in spotting marijuana from the air and that he had successfully found marijuana "many times in the past." These statements establish that Trooper Peevyhouse was reliable and that he was providing information about the presence of marijuana based on his direct, personal knowledge. Thus, the affidavit, on its face, provides ample grounds for the issuance of a warrant to search the Wares' property.

The fact that Trooper Peevyhouse requested the officers on the ground to "confirm" that they had found the marijuana is not so much an indication of his uncertainty as much as it was a direction to the officers to verify that they had found the marijuana he had already discovered. Trooper Peevyhouse and Agent

Lawson observed the marijuana from both 900 feet and then from 500 feet. The photographs in the record depict the sunlight filtering through the cloth netting enabling the officers to see the marijuana growing underneath. The record contains more than sufficient evidence to establish that Trooper Peevyhouse was in a position where he could reliably identify the growing plants as marijuana. Accordingly, Trooper Peevyhouse's statements in the affidavit provided information, independent from the information discovered by the agents on the ground when they first entered the Wares' property, that provided an adequate basis for issuing the warrant to search the Wares' property.

### III.

The Wares also insist that the record does not contain substantial and material evidence supporting the Commissioner's decision to forfeit the personal property seized from their house on September 29 and 30, 1994. For the purpose of review under Tenn. Code Ann. § 4-5-322(h)(5) (Supp. 1997), "substantial and material evidence" is such relevant evidence that a reasonable mind may accept to support a rational conclusion and to furnish a reasonably sound basis for the action under consideration. *See Southern Ry. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984). This amount of evidence is something less than a preponderance of the evidence but more than a scintilla or a glimmer. *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988).

We use the same standard to review administrative decisions that trial courts use. *See Estate of Street v. State Bd. of Equalization*, 812 S.W.2d 583, 585 (Tenn. Ct. App. 1990). When we are reviewing the evidentiary foundation of an administrative decision under Tenn. Code Ann. § 4-5-322(h)(5), we are not permitted to weigh factual evidence and substitute our own conclusions and judgment for that of the agency, even if the evidence could support a different determination than the agency reached. *See* Tenn. Code Ann. § 4-5-322(h); *Humana of Tenn. v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977).

The administrative record contains overwhelming evidence that the Wares were engaged in a clandestine commercial marijuana business at their home near Waynesboro. Agent Lawson and Trooper Peevyhouse personally observed a large patch of marijuana growing near their house. This evidence alone, especially in the absence of any exculpatory explanations from the Wares themselves, provides substantial and material evidence that the cash and personal property seized at the Wares' home on September 29 and 30, 1994 was either furnished or intended to be furnished in exchange for controlled substances, proceeds traceable to the exchange of controlled substances, or property used or intended to be used to facilitate violations of the Tennessee Drug Control Act of 1989. Accordingly, the Commissioner declared that the seized property should be forfeited.

## IV.

We affirm the order of the Commissioner of Safety declaring the seized property forfeited under the Tennessee Drug Control Act of 1989 and remand the case to the trial court with directions to remand it to the Commissioner of Safety for whatever proceedings may be required. We tax the costs of this appeal, jointly and severally, to William Ware, Virginia Ware, and Summer Ware, and their surety, for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
BEN H. CANTRELL, JUDGE